1  E. MARTIN ESTRADA
   United States Attorney
2  BENJAMIN J. BARRON
   Assistant United States Attorney
3  Chief, Santa Ana Branch Office
   CHARLES E. PELL (Cal. State Bar No. 210309)
4  Assistant United States Attorney
   Santa Ana Branch Office
5       United States Courthouse
        411 West Fourth Street, Suite 8000
6       Santa Ana, California  92701
        Telephone:  (714) 338-3542
7       Facsimile:  (714) 338-3561
        E-mail:   charles.e.pell2@usdoj.gov
8
   Attorneys for Plaintiff
9  UNITED STATES OF AMERICA

| FILED |
| CLERK, U.S. DISTRICT COURT |
| 6/29/2023 |
| CENTRAL DISTRICT OF CALIFORNIA |
| BY: ___CD___ DEPUTY |

10              UNITED STATES DISTRICT COURT

11         FOR THE CENTRAL DISTRICT OF CALIFORNIA

12                   SOUTHERN DIVISION

13  UNITED STATES OF AMERICA,          No.  2:23-cr-00323-JFW

14            Plaintiff,               PLEA AGREEMENT FOR DEFENDANT
                                       VANETDA CHAVETT WARD
15            v.

16  VANETDA CHAVETT WARD,

17            Defendant.

18

19       1.   This constitutes the plea agreement between VANETDA CHAVETT

20  WARD ("defendant") and the United States Attorney's Office for the

21  Central District of California (the "USAO") in the investigation of

22  fraud against Bank of America and California EDD.  This agreement is

23  limited to the USAO and cannot bind any other federal, state, local,

24  or foreign prosecuting, enforcement, administrative, or regulatory

25  authorities.

26                   DEFENDANT'S OBLIGATIONS

27       2.   Defendant agrees to:

28            a.   Give up the right to indictment by a grand jury and,

at the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to a two-count information in the form attached to this agreement as Exhibit A or a substantially similar form, which charges defendant with Conspiracy to Commit Bank Fraud, in violation of 18 U.S.C. § 1349 (count one) and identity theft in violation of 18 U.S.C. §§ 1028(a)(7), (b)(1)(D) (count two).

        b.    Not contest facts agreed to in this agreement.

        c.    Abide by all agreements regarding sentencing contained in this agreement.

        d.    Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

        e.    Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

        f.    Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

        g.    Pay the applicable special assessments at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

        h.    Defendant agrees that any and all criminal debt ordered by the Court will be due once the period of supervised release commences.  The government is not precluded from pursuing, in excess of any payment schedule set by the Court, any and all available remedies by which to satisfy defendant's payment of the full financial obligation, including referral to the Treasury Offset Program.

1        i.   Complete the Financial Disclosure Statement on a form
2  provided by the USAO and, within 30 days of defendant's entry of a
3  guilty plea, deliver the signed and dated statement, along with all
4  of the documents requested therein, to the USAO by either email at
5  usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial
6  Litigation Section at 300 North Los Angeles Street, Suite 7516, Los
7  Angeles, CA 90012.  Defendant agrees that defendant's ability to pay
8  criminal debt shall be assessed based on the completed Financial
9  Disclosure Statement and all required supporting documents, as well
10  as other relevant information relating to ability to pay.

11        j.   Authorize the USAO to obtain a credit report upon
12  returning a signed copy of this plea agreement.

13        k.   Consent to the USAO inspecting and copying all of
14  defendant's financial documents and financial information held by the
15  United States Probation and Pretrial Services Office.

16  THE USAO'S OBLIGATIONS

17  3.   The USAO agrees to:

18        a.   Not contest facts agreed to in this agreement.

19        b.   Abide by all agreements regarding sentencing contained
20  in this agreement.

21        c.   At the time of sentencing, provided that defendant
22  demonstrates an acceptance of responsibility for the offenses up to
23  and including the time of sentencing, recommend a two-level reduction
24  in the applicable Sentencing Guidelines offense level, pursuant to
25  U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an
26  additional one-level reduction if available under that section.

27        d.   Recommend that defendant be sentenced to a term of
28  imprisonment no higher than the low end of the applicable Sentencing

3

Guidelines range, provided that the offense level used by the Court
to determine that range is 18 or higher and provided that the Court
does not depart downward in offense level or criminal history
category.  For purposes of this agreement, the low end of the
Sentencing Guidelines range is that defined by the Sentencing Table
in U.S.S.G. Chapter 5, Part A, without regard to reductions in the
term of imprisonment that may be permissible through the substitution
of community confinement or home detention as a result of the offense
level falling within Zone B or Zone C of the Sentencing Table.

<u>NATURE OF THE OFFENSES</u>

4.   Defendant understands that for defendant to be guilty of
the crime charged in count one of the information, that is,
Conspiracy to Commit Bank Fraud, in violation of Title 18, United
States Code, Section 1349, the following must be true: (1) there was
an agreement between two or more persons to commit bank fraud in
violation of Title 18, United States Code, Section 1344(2); and
(2) defendant became a member of the conspiracy knowing of at least
one of its objects and intending to help accomplish it.   Defendant
understands that the elements of the charged object of the
conspiracy, Bank Fraud, in violation of Title 18, United States Code,
Section 1344(2), are the following: (1) Defendant knowingly carried
out a scheme or plan to obtain money or property from a financial
institution by making false statements or promises; (2) Defendant
knew that the statements or promises were false; (3) The statements
or promises were material; that is, they had a natural tendency to
influence, or were capable of influencing, a financial institution to
part with money or property; (4) Defendant acted with the intent to
defraud; and (5) The financial institution was federally insured.

1     5.    Defendant understands that for defendant to be guilty of

2 the crime charged in count two of the information, that is, identity

3 theft, in violation of Title 18, United States Code, Sections

4 1028(a)(7) and (b)(1)(D), the following must be true: (1) defendant

5 knowingly possessed and used a means of identification of another

6 person; (2) defendant did so without lawful authority; (3) defendant

7 intended to commit bank fraud in violation of 18 U.S.C. § 1344; and

8 (4) in the course of use or possession, the means of identification

9 was transported in the mail.  For the heightened statutory maximum in

10 Section 1028(b)(1)(D) to apply, the government must prove that the

11 offense involved the transfer, possession, or use of one or more

12 means of identification where any individual who committed the

13 offense obtained anything of value aggregating $1,000 or more during

14 any one year period.

PENALTIES AND RESTITUTION

16     6.    Defendant understands that the statutory maximum sentence

17 that the Court can impose for a violation of Title 18, United States

18 Code, Section 1349, as charged in count one of the indictment, is 30

19 years' imprisonment; a three-year period of supervised release; a

20 fine of $1,000,000 or twice the gross gain or gross loss resulting

21 from the offense, whichever is greatest; and a mandatory special

22 assessment of $100.

23     7.    Defendant understands that the statutory maximum sentence

24 that the Court can impose for a violation of Title 18, United States

25 Code, Section 1028(a)(7), (b)(1)(D), is: 15 years' imprisonment; a

26 three-year period of supervised release; a fine of $250,000 or twice

27 the gross gain or gross loss resulting from the offense, whichever is

28 greatest; and a mandatory special assessment of $100.

1      8.    Defendant understands, therefore, that the total maximum

2   sentence for all offenses to which defendant is pleading guilty is:

3   45 years' imprisonment; a three-year period of supervised release; a

4   fine of $1,250,000 or twice the gross gain or gross loss resulting

5   from the offenses, whichever is greatest; and a mandatory special

6   assessment of $200.

7      9.    Defendant understands that defendant will be required to

8   pay full restitution to the victim(s) of the offenses to which

9   defendant is pleading guilty.  Defendant agrees that, in return for

10  the USAO's compliance with its obligations under this agreement, the

11  Court may order restitution to persons other than the victim(s) of

12  the offenses to which defendant is pleading guilty and in amounts

13  greater than those alleged in the counts to which defendant is

14  pleading guilty.  In particular, defendant agrees that the Court may

15  order restitution to any victim of any of the following for any

16  losses suffered by that victim as a result: any relevant conduct, as

17  defined in U.S.S.G. § 1B1.3, in connection with the offenses to which

18  defendant is pleading guilty.  The parties currently believe that the

19  applicable amount of restitution is approximately $185,004.41, but

20  recognize and agree that this amount could change based on facts that

21  come to the attention of the parties prior to sentencing.

22     10.   Defendant understands that supervised release is a period

23  of time following imprisonment during which defendant will be subject

24  to various restrictions and requirements.  Defendant understands that

25  if defendant violates one or more of the conditions of any supervised

26  release imposed, defendant may be returned to prison for all or part

27  of the term of supervised release authorized by statute for the

28  offense that resulted in the term of supervised release, which could

6

result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

11. Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that she is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition. Defendant understands that the convictions in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license. Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty pleas.

12. Defendant and her counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the convictions in this case make it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States. Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case. Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including her attorney or the Court, can predict to an absolute certainty the effect of her convictions on her immigration

1  status.  Defendant nevertheless affirms that she wants to plead
2  guilty regardless of any immigration consequences that her pleas may
3  entail, even if the consequence is automatic removal from the United
4  States.

5                              FACTUAL BASIS

6      13.  Defendant admits that defendant is, in fact, guilty of the
7  offenses to which defendant is agreeing to plead guilty.  Defendant
8  and the USAO agree to the statement of facts provided below and agree
9  that this statement of facts is sufficient to support pleas of guilty
10 to the charges described in this agreement and to establish the
11 Sentencing Guidelines factors set forth in paragraph 15 below but is
12 not meant to be a complete recitation of all facts relevant to the
13 underlying criminal conduct or all facts known to either party that
14 relate to that conduct.

15     From in or around June 2020 through at least September 2020,
16 within the Central District of California, defendant knowingly and
17 willfully participated in a conspiracy to defraud the California
18 Employment Development Department (EDD) of more than $200,000 of
19 COVID-related unemployment funds under the Pandemic Unemployment
20 Assistance (PUA) provision of the federal CARES Act, a provision that
21 was designed to help unemployed individuals obtain unemployment
22 insurance benefits as part of the nation's response to the economic
23 harms caused by COVID-19.  As a further object of that fraudulent
24 conspiracy, defendant fraudulently obtained money from Bank of
25 America (BofA) by making false statements or promises, which she knew
26 were false.  While participating in the fraudulent conspiracy,
27 defendant acted with the intent to defraud; that is, the intent to
28 deceive and cheat.

1     In the fraudulent scheme, defendant and her co-conspirators

2   would apply for benefits from California EDD in the names of third

3   parties using false statements to qualify, and sometimes using stolen

4   identities.  Defendant would use Personally Identifiable Information

5   (PII) of others in those fraudulent applications filed with EDD.

6   During the fraudulent conspiracy, defendant would also send and

7   receive text messages that contained PII, including names and dates

8   of birth, of third parties.

9     Defendant would use her personal residence in Los Angeles, as

10   well as a neighboring property, as the mailing addresses for a total

11   of more than 15 fraudulent claims filed with California EDD from June

12   2020 through August 2020, in the names of individuals A.C., S.M.,

13   A.K., L.Y., S.C., S.K., K.C., J.P., T.J., J.M., T.N., E.A., L.A.,

14   M.N., T.C., V.G., and defendant.  Those fraudulent claims resulted in

15   mailings of Electronic Bill Payment (EBP) debit cards administered by

16   BofA that defendant and her co-conspirators subsequently used to

17   access the fraudulently obtained benefits.  During the scheme,

18   defendant and her co-conspirators used EDD debit cards in other

19   people's names to make a total of more than $70,000 in cash

20   withdrawals from ATMs, mostly at BofA.

21     Many of the claims for benefits in the fraudulent conspiracy

22   falsely asserted that the named claimants were self-employed and

23   negatively affected by the COVID-19 pandemic, thereby triggering

24   eligibility for unemployment benefits under the PUA provision of the

25   CARES Act.  The unemployment claims submitted in furtherance of the

26   conspiracy falsely reported to EDD that the named claimants were

27   located at defendant's and other residences and worked in California,

28   when in truth and fact, many of those claimants had never lived or

worked in California.  Several of the purported claimants were
deceased, and at least one claimant was incarcerated at the time that
defendant caused the fraudulent claims to be filed with California
EDD.  Moreover, the false claims would list almost identical
employment information.  For example, most of the claim applications
that used defendant's residential address reported their usual
occupation as "baker."  In addition, defendant filed a claim for her
son K.C., who was just 9 years old at the time.

On or about August 15, 2020, defendant caused a PUA claim in the
name of M.N. to be filed online with California EDD, which falsely
reported that M.N. resided at defendant's residence.  That claim also
falsely reported that M.N. was a baker in Fresno County with an
annual salary of $75,000, and that M.N.'s purported employment was
allegedly negatively impacted by COVID 19 beginning in March 2020.
Defendant fraudulently used M.N.'s identity to file that claim,
because M.N. did not know defendant and did not give defendant or
anyone else permission to file any claim in M.N.'s name.  In truth
and in fact, at the time of that claim, M.N. lived in Missouri, and
M.N. has never lived nor been employed in California.  On or about
August 16, 2020, California EDD issued a debit card in M.N.'s name,
which was mailed to defendant's residence in Los Angeles and provided
a total of $22,800 in unemployment benefit funds.

Defendant and her co-conspirators would use the fraudulently
obtained EDD debit cards in other people's names to withdraw cash
from ATMs.  On September 18, 2020, defendant used EBP debit card
ending in 0538 in the name of S.M., a California prison inmate, to
withdraw $1,000 from a BofA ATM in Los Angeles, California.
Defendant and co-conspirators used that card in S.M.'s name to

withdraw a total of approximately $10,000 in cash withdrawals from
ATMs.  At the time that defendant made those cash withdrawals using
the BofA debit card in S.M.'s name, BofA was federally insured.  The
claim filed in S.M.'s name was fraudulent, because S.M. was
incarcerated at the time, and thus, ineligible for COVID-related
unemployment benefits.  Defendant also sent and received text
messages about filing fraudulent claims in the names of people in
prison, which were obtained by search warrants.  For example, on
August 3, 2020, defendant sent a text message to a co-conspirator,
which wrote: "I got 2 guys in prison want edd I'm gonna have [a co-
conspirator] do it I will pay u 1500 to do me 2 emails and passwords
for them."

     The parties agree that for purposes of this plea agreement, the
intended loss applicable to defendant's participation in the bank
fraud conspiracy is approximately $239,854 based upon approximately
17 fraudulent EDD claims, and during the fraudulent scheme, defendant
possessed and used more than 10 means of identification of others.

<u>SENTENCING FACTORS</u>

     14.  Defendant understands that in determining defendant's
sentence the Court is required to calculate the applicable Sentencing
Guidelines range and to consider that range, possible departures
under the Sentencing Guidelines, and the other sentencing factors set
forth in 18 U.S.C. § 3553(a).  Defendant understands that the
Sentencing Guidelines are advisory only, that defendant cannot have
any expectation of receiving a sentence within the calculated
Sentencing Guidelines range, and that after considering the
Sentencing Guidelines and the other § 3553(a) factors, the Court will
be free to exercise its discretion to impose any sentence it finds

1    appropriate up to the maximum set by statute for the crimes of

2    conviction.

3        15.  Defendant and the USAO agree to the following applicable

4    Sentencing Guidelines factors:

5    Count one (bank fraud)

6        Base Offense Level:              7        U.S.S.G. § 2B1.1(a)(1)

7        $150k < loss < $250k:          +10        U.S.S.G. § 2B1.1(b)(1)(F)

8        >10 victims:                   +2        U.S.S.G. § 2B1.1(b)(2)(A)

9        Possess >5 means of ID:        +2        U.S.S.G. § 2B1.1(b)(11)(C)

10   Count two (ID theft)

11       Base Offense Level:              6        U.S.S.G. § 2B1.1(a)(2)

12       $150k < loss < $250k:          +10        U.S.S.G. § 2B1.1(b)(1)(F)

13       >10 victims:                   +2        U.S.S.G. § 2B1.1(b)(2)(A)

14       Possess >5 means of ID:        +2        U.S.S.G. § 2B1.1(b)(11)(C)

15   Multiple Count Adjustment

16   Group One (counts 1 and 2):   1 unit        U.S.S.G. § 3D1.4(a)

17   Total Units:                  1 unit

18       Combined total offense level

19   Greatest group offense level:        21

20   Grouping increase:                   +0     U.S.S.G. § 3D1.4

21   Acceptance of Responsibility         −3     U.S.S.G. § 3E1.1

22   **TOTAL OFFENSE LEVEL:**              **18**

23   The USAO will agree to a two-level downward adjustment for acceptance

24   of responsibility (and, if applicable, move for an additional one-

25   level downward adjustment under U.S.S.G. § 3E1.1(b)) only if the

26   conditions set forth in paragraph 3(c) are met and if defendant has

27   not committed, and refrains from committing, acts constituting

28   obstruction of justice within the meaning of U.S.S.G. § 3C1.1, as

discussed below. Subject to paragraph 29 below, defendant and the
USAO agree not to seek, argue, or suggest in any way, either orally
or in writing, that any other specific offense characteristics,
adjustments, or departures relating to the offense level be imposed.
Defendant agrees, however, that if, after signing this agreement but
prior to sentencing, defendant were to commit an act, or the USAO
were to discover a previously undiscovered act committed by defendant
prior to signing this agreement, which act, in the judgment of the
USAO, constituted obstruction of justice within the meaning of
U.S.S.G. § 3C1.1, the USAO would be free to seek the enhancement set
forth in that section and to argue that defendant is not entitled to
a downward adjustment for acceptance of responsibility under U.S.S.G.
§ 3E1.1.

16.   Defendant understands that there is no agreement as to
defendant's criminal history or criminal history category.

17.   Defendant and the USAO reserve the right to argue for a
sentence outside the sentencing range established by the Sentencing
Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1),
(a)(2), (a)(3), (a)(6), and (a)(7).

18.   Notwithstanding anything to the contrary in this agreement,
defendant will not recommend, argue, or otherwise suggest that the
Court impose a sentence of below 24 months of imprisonment.

## WAIVER OF CONSTITUTIONAL RIGHTS

19.   Defendant understands that by pleading guilty, defendant
gives up the following rights:

a.   The right to persist in a plea of not guilty.

b.   The right to a speedy and public trial by jury.

c.   The right to be represented by counsel -- and if

1   necessary have the Court appoint counsel -- at trial.  Defendant

2   understands, however, that, defendant retains the right to be

3   represented by counsel -- and if necessary have the Court appoint

4   counsel -- at every other stage of the proceeding.

5           d.   The right to be presumed innocent and to have the

6   burden of proof placed on the government to prove defendant guilty

7   beyond a reasonable doubt.

8           e.   The right to confront and cross-examine witnesses

9   against defendant.

10          f.   The right to testify and to present evidence in

11  opposition to the charges, including the right to compel the

12  attendance of witnesses to testify.

13          g.   The right not to be compelled to testify, and, if

14  defendant chose not to testify or present evidence, to have that

15  choice not be used against defendant.

16          h.   Any and all rights to pursue any affirmative defenses,

17  Fourth Amendment or Fifth Amendment claims, and other pretrial

18  motions that have been filed or could be filed.

19                  WAIVER OF RETURN OF DIGITAL DATA

20      20.  Understanding that the government has in its possession

21  digital devices and/or digital media seized from defendant, defendant

22  waives any right to the return of digital data contained on those

23  digital devices and/or digital media and agrees that if any of these

24  digital devices and/or digital media are returned to defendant, the

25  government may delete all digital data from those digital devices

26  and/or digital media before they are returned to defendant.

27                  WAIVER OF APPEAL OF CONVICTIONS

28      21.  Defendant understands that, with the exception of an appeal

14

1   based on a claim that defendant's guilty pleas were involuntary, by

2   pleading guilty defendant is waiving and giving up any right to

3   appeal defendant's convictions on the offenses to which defendant is

4   pleading guilty.  Defendant understands that this waiver includes,

5   but is not limited to, arguments that the statutes to which defendant

6   is pleading guilty are unconstitutional, and any and all claims that

7   the statement of facts provided herein is insufficient to support

8   defendant's pleas of guilty.

9                   WAIVER OF APPEAL AND COLLATERAL ATTACK

10       22.  Defendant gives up the right to appeal all of the

11  following: (a) the procedures and calculations used to determine and

12  impose any portion of the sentence; (b) the term of imprisonment

13  imposed by the Court, including, to the extent permitted by law, the

14  constitutionality or legality of defendant's sentence, provided it is

15  within the statutory maximum; (c) the fine imposed by the Court,

16  provided it is within the statutory maximum; (d) the amount and terms

17  of any restitution order, provided it requires payment of no more

18  than $500,000; (e) the term of probation or supervised release

19  imposed by the Court, provided it is within the statutory maximum;

20  and (f) any of the following conditions of probation or supervised

21  release imposed by the Court: the conditions set forth in Second

22  Amended General Order 20-04 of this Court; the drug testing

23  conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the

24  alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

25       23.  Defendant also gives up any right to bring a post-

26  conviction collateral attack on the convictions or sentence,

27  including any order of restitution, except a post-conviction

28  collateral attack based on a claim of ineffective assistance of

1    counsel, a claim of newly discovered evidence, or an explicitly

2    retroactive change in the applicable Sentencing Guidelines,

3    sentencing statutes, or statutes of conviction.  Defendant

4    understands that this waiver includes, but is not limited to,

5    arguments that the statutes to which defendant is pleading guilty are

6    unconstitutional, and any and all claims that the statement of facts

7    provided herein is insufficient to support defendant's pleas of

8    guilty.

9         24.  This agreement does not affect in any way the right of the

10   USAO to appeal the sentence imposed by the Court.

11                  RESULT OF WITHDRAWAL OF GUILTY PLEA

12        25.  Defendant agrees that if, after entering guilty pleas

13   pursuant to this agreement, defendant seeks to withdraw and succeeds

14   in withdrawing defendant's guilty pleas on any basis other than a

15   claim and finding that entry into this plea agreement was

16   involuntary, then the USAO will be relieved of all of its obligations

17   under this agreement.

18                     EFFECTIVE DATE OF AGREEMENT

19        26.  This agreement is effective upon signature and execution of

20   all required certifications by defendant, defendant's counsel, and an

21   Assistant United States Attorney.

22                         BREACH OF AGREEMENT

23        27.  Defendant agrees that if defendant, at any time after the

24   signature of this agreement and execution of all required

25   certifications by defendant, defendant's counsel, and an Assistant

26   United States Attorney, knowingly violates or fails to perform any of

27   defendant's obligations under this agreement ("a breach"), the USAO

28   may declare this agreement breached.  All of defendant's obligations

16

are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered guilty pleas pursuant to this agreement, defendant will not be able to withdraw the guilty pleas, and (b) the USAO will be relieved of all its obligations under this agreement.

COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES
OFFICE NOT PARTIES

28.   Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

29.   Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 15 are consistent with the facts of this case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed

as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

30.  Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty pleas, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

31.  Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

///

///

///

<u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

32.  The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

E. MARTIN ESTRADA
United States Attorney

_____        06.27.2023
CHARLES E. PELL                           Date
Assistant United States Attorney

_____        6-26-2023
VANETDA CHAVETT WARD                      Date
Defendant

_____        06-26-2023
HOLT ORTIZ ALDEN                          Date
DEPUTY FEDERAL PUBLIC DEFENDER
Attorney for Defendant
VANETDA CHAVETT WARD

<u>CERTIFICATION OF DEFENDANT</u>

I have read this agreement in its entirety.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  No promises, inducements, or representations of any kind have been made to me other than those

19

1  contained in this agreement.  No one has threatened or forced me in
2  any way to enter into this agreement.  I am satisfied with the
3  representation of my attorney in this matter, and I am pleading
4  guilty because I am guilty of the charges and wish to take advantage
5  of the promises set forth in this agreement, and not for any other
6  reason.
7
8  _____          6-26-2023  _____
   VANETDA CHAVETT WARD                      Date
9  Defendant

10           CERTIFICATION OF DEFENDANT'S ATTORNEY
11       I am VANETDA CHAVETT WARD's attorney.  I have carefully and
12  thoroughly discussed every part of this agreement with my client.
13  Further, I have fully advised my client of her rights, of possible
14  pretrial motions that might be filed, of possible defenses that might
15  be asserted either prior to or at trial, of the sentencing factors
16  set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines
17  provisions, and of the consequences of entering into this agreement.
18  To my knowledge: no promises, inducements, or representations of any
19  kind have been made to my client other than those contained in this
20  agreement; no one has threatened or forced my client in any way to
21  enter into this agreement; my client's decision to enter into this
22  agreement is an informed and voluntary one; and the factual basis set
23  forth in this agreement is sufficient to support my client's entry of
24  guilty pleas pursuant to this agreement.
25
26  _____          6-26-2023  _____
   HOLT ORTIZ ALDEN                          Date
27  DEPUTY FEDERAL PUBLIC DEFENDER
   Attorney for Defendant
   VANETDA CHAVETT WARD
28

1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9            FOR THE CENTRAL DISTRICT OF CALIFORNIA

10   UNITED STATES OF AMERICA,            No.

11              Plaintiff,                I N F O R M A T I O N

12              v.                        [18 U.S.C. § 1349: Conspiracy to
                                          Commit Bank Fraud; 18 U.S.C.
13   VANETDA CHAVETT WARD,                §§ 1028(a)(7), (b)(1)(D): Unlawful
                                          Transfer, Possession, and Use of
14              Defendant.                Means of Identification]

15

16       The United States Attorney charges:

17                            COUNT ONE

18                         [18 U.S.C. § 1349]

19   A.   OBJECT OF THE CONSPIRACY

20       1.   Beginning on an unknown date, and continuing through at

21   least in or around September 2020, in Los Angeles County, within the

22   Central District of California, and elsewhere, defendant VANETDA

23   CHAVETT WARD knowingly conspired with others known and unknown to the

24   United States Attorney to commit bank fraud, in violation of Title

25   18, United States Code, Section 1344(2).

26   B.   MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE

27       ACCOMPLISHED

28       2.   The object of the conspiracy was to be accomplished, in

substance, as follows:

a.   Defendant WARD and her co-conspirators would submit fraudulent applications for California EDD unemployment benefits in other people's names to be filed using mailing addresses under defendant WARD's control, including her residence in Los Angeles, California.

b.   Based upon those fraudulent applications, California EDD would mail debit cards and other correspondence to the addresses listed on the applications, including to defendant WARD's residence.

c.   After the debit cards from California EDD were received, defendant WARD and her co-conspirators would use those EDD debit cards in the names of others to withdraw cash from Bank of America ATMs.

C.   OVERT ACTS

3.   In furtherance of the conspiracy, and to accomplish its object, defendant WARD, together with others known and unknown to the Grand Jury, on or about the date set forth below, committed and caused to be committed various overt acts, in the Central District of California, and elsewhere, including, but not limited to, the following:

Overt Act No. 1: On or about August 17, 2020, defendant WARD received a California EDD card in the name of M.N. at defendant WARD's residence, based upon a fraudulent application that had been filed using stolen identity M.N.

Overt Act No. 2: On or about September 18, 2020, defendant WARD used EDD debit card ending in 0538 in the name of S.M., a California prison inmate, to withdraw $1,000 from a Bank of America ATM in Los Angeles, California, which was one of many ATM withdrawals totaling

approximately $11,800 that defendant did using that fraudulently obtained EDD debit card.

COUNT TWO

[18 U.S.C. §§ 1028(a)(7), (b)(1)(D)]

4.    On or about August 16, 2020, in Los Angeles County, within the Central District of California, defendant VANETDA CHAVETT WARD knowingly transferred, possessed, and used, without lawful authority, means of identification of another person, namely, the name and debit card number of M.N., in defendant WARD's residence in Los Angeles, California, with the intent to commit, to aid and abet the commission of, and in connection with the commission of, a violation of Federal law, namely, Conspiracy to Commit Bank Fraud, in violation of Title 18, United States Code, Section 1349, with said transfer, possession, and use affecting interstate and foreign commerce and resulting in obtaining anything of value aggregating $1,000 or more during any one year period.

E. MARTIN ESTRADA
United States Attorney


MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

BENJAMIN R. BARRON
Assistant United States Attorney
Chief, Santa Ana Branch Office

BRADLEY E. MARRETT
Assistant United States Attorney
Deputy Chief, Santa Ana Branch
Office

CHARLES E. PELL
Assistant United States Attorney
Santa Ana Branch Office

4